FILED by MM D.C.

MAR 20 2017

STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA. - MIAMI

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**(Miami Division)**

---------------------------------------------------------------x

**GENESIS TAN, ROLAND MORALES,**
**LOLITO BANANO, MA. GRACE DALIDA,**
**and BERNARD DESCALLAR,**

*Plaintiffs,*

- against -

**JOSE VILLANUEVA and SAN VILLA SHIP MANAGEMENT CO.,**

*Defendants.*

---------------------------------------------------------------x

Docket No. 17-cv-________

**COMPLAINT**
Trial by Jury

**Plaintiffs** GENESIS TAN, ROLAND MORALES, LOLITO BANANO, MA. GRACE DALIDA and BERNARD DESCALLAR, appearing *pro se*[1], respectfully allege as follows:

**PRELIMINARY STATEMENT**

1. This action arises out of Defendants' scheme to defraud Plaintiffs through false representations and abuse of the legal process resulting in the forced labor, human trafficking and wage exploitation of the Plaintiffs by Defendants.

2. Plaintiffs were brought into this country as H-2B guest workers from the Philippines under false promises of fair pay and humane treatment. Defendants knowingly and willfully conspired to recruit Plaintiffs (and others) from the Philippines, using fraudulent visa applications, false promises and misrepresentations regarding the terms and conditions of employment to induce Plaintiffs to work for Defendants in the United States.

3. Defendants forced Plaintiffs to live in severely overcrowded housing. To ensure that Plaintiffs (and other H-2B workers) complied with their work schedules or to ensure that

---

[1] Plaintiffs, though appearing *pro se*, respectfully manifest that they were assisted in the preparation of this Complaint by a lawyer admitted to practice law in the state of New York and who is affiliated with a NY non-profit organization called Filipino-American Foundation for Immigration and Employment Advocacy, Inc.

Plaintiffs continued to stay with Defendants despite the harshness of their living conditions, Defendants threatened Plaintiffs with loss of immigration status or cancellation of visa/status, and deportation. As a result of this campaign of fraud and coercion, Plaintiffs remained in constant fear of the Defendants and each believed s/he had no choice but to obey their orders and continue working.

4. Plaintiffs assert claims arising from violations of their rights under the Trafficking Victims Protection Act (18 U.S.C. §1589 and 18 U.S.C. §1590); and Alien Tort Statute (28 U.S.C. §1350).

**JURISDICTION AND VENUE**

5. This Court has jurisdiction pursuant to 18 U.S.C. §1595(a), a federal question, this action arising under the Trafficking Victims Protection Act (TVPA); and by 28 U.S.C. §1350, this action arising under the Alien Tort Statute.

6. Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in the Southern District of Florida, and also because Defendants' residence and/or place of business is within the Southern District of Florida. Venue is proper pursuant to 18 U.S.C. §1965.

**PARTIES**

7. Plaintiff Genesis Tan ("Tan") is a citizen of the Philippines. He entered the United States lawfully sometime on April 6, 2006 with an H-2B visa to perform labor for Defendants. He presently resides in Miami-Dade County, state of Florida.

8. Plaintiff Roland Morales ("Morales") is a citizen of the Philippines. He entered the United States lawfully sometime on February 17, 2009 with an H-2B visa to perform labor for Defendants. He presently resides in Miami-Dade County, state of Florida.

9. Plaintiff Lolito Banano ("Banano") is a citizen of the Philippines. He entered the United States lawfully sometime on February 6, 2007 to perform labor for Defendants. He presently resides in Miami-Dade County, state of Florida.

10. Plaintiff Ma. Grace Dalida ("Dalida") is a citizen of the Philippines. She entered the United States lawfully sometime on September 28, 2007 to perform labor for Defendants. She presently resides in Palm Beach County, state of Florida.

11. Plaintiff Bernard Descallar ("Descallar") is a citizen of the Philippines. He entered the United States lawfully sometime on December 8, 2007 to perform labor for Defendants. He presently resides in Palm Beach County, state of Florida.

12. Defendant Jose Villaneuva ("Villanueva") is, upon information and belief, the President, Chief Executive Officer, director, member or representative of San Villa Ship Management Co. Likewise upon information and belief, Villanueva does business and can be located at 2425 NW 33rd Avenue, 2nd Floor, Miami, FL 33142, within this District.

13. Defendant San Villa Ship Management Co. ("San Villa Co.") is, upon information and belief, a Florida corporation with its principal office address located at 2425 NW 33rd Avenue, 2nd Floor, Miami, FL 33142, within this District.

14. Villanueva recruited Plaintiffs (and other Filipino seasonal workers) from the Philippines to come and work as waiters and/or housekeepers with United States employers.

15. San Villa Co. is, upon information and belief, a labor staffing company that had gross annual revenue income of at least $500,000.

16. Upon information and belief, Defendant Villanueva determined Plaintiffs' places of employment, established the terms of their employment, and controlled their work schedules.

17. At all times relevant to this action, Defendants Villanueva and San Villa Co. constituted a unified operation, were under common control for a common business purpose, had employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, and had an aggregate annual gross volume of business of at least $500,000.

## STATEMENT OF FACTS

18. During 2006 through 2009, Defendants, directly and through their agents, recruited Plaintiffs from the Philippines to perform work in the United States.

19. Defendants recruited guest workers from the Philippines under the H-2B visa program. During the recruitment, Defendants provided Plaintiffs and other San Villa recruits with false and misleading information about the terms and conditions of their employment, such as the amount and type of work, wages, and benefits. Defendants also misled the U.S. government by providing inaccurate information on the H-2B visa applications and Department of Labor certification forms submitted for Plaintiffs, including the location and amount of work and pay. Under circumstances as detailed below, Plaintiffs were forced to provide services and continue working or making themselves available for Defendants until sometime May 2010.

20. Among the promises made by Defendants to each of the Plaintiffs were the following:

(a) Defendants Villanueva and San Villa Co. informed Plaintiffs that they would be provided free housing and transportation while employed by San Villa Co.;

(b) Villanueva told Plaintiffs their regular work hours would be eight hours per day;

(c) Villanueva told Plaintiffs that they would have ample opportunity to work in the United States, including overtime hours;

(d) Villanueva told Plaintiffs that there were jobs already awaiting them in the United States;

(e) Defendants Villanueva and San Villa Co. told Plaintiffs that they would be employed as waitress or waiter, or as housekeepers;

(f) Defendant Villanueva informed Plaintiffs that San Villa Co. would extend their H-2B status or visa, and would eventually sponsor each one of them for a "green card" or lawful permanent residency in the United States.

21. As a result of the representations made by Defendants, Plaintiffs accepted Defendants' offer of employment, all of them undertaking significant debt, foregoing other employment opportunities and leaving their families to earn a livelihood working for San Villa Co.

22. Plaintiffs were required to incur significant expenses to secure employment with San Villa Co. The required recruitment fees and employment-related expenses were so high that Plaintiffs had to enter into debt in order to pay them.

23. The mandatory fees included: medical examination fees, visa application fees, and a fee paid to the Philippine Overseas Employment Agency (POEA), a Philippine agency. Plaintiffs were also required to pay fees for training and certification in English proficiency and in food and beverage services.

24. Defendants likewise required Plaintiffs to deposit money amounting to at least fifty thousand pesos (P50,000) to a hundred thousand pesos (P100,000), as and by way of security deposit or bond just in case Plaintiffs would leave their employment with the Defendants before the end of their contracts. Plaintiffs who had to borrow money from lenders and relatives

to raise these security deposits were surprised to learn belatedly that these amounts had been withdrawn without their knowledge and consent by the Defendants.

25. Prior to each Plaintiff's departure for the United States, Defendants, through their agents, or through Defendant Villanueva himself, required each of the Plaintiffs to sign a Seasonal Contract with Defendant San Villa Co.

26. The written contracts did not include several important promises made to Plaintiffs by Defendants, including those relating to free housing, transportation and overtime hour payments.

27. Defendants, through their Philippine agents, required each Plaintiff to sign blank documents, including another set of employment contracts, just before the Plaintiffs' departure to the United States. Defendants promised to give each Plaintiff a copy of the completed contract upon arrival in the United States.

28. Upon each Plaintiff's arrival in the United States, Defendants obligated them to reside in severely overcrowded staff houses that were strictly controlled by Defendants. Once employed by Defendants, Plaintiffs were monitored, intimidated, threatened, and forced to live in unsafe and severely overcrowded housing.

29. Defendants required Plaintiffs to work in conditions, locations and positions different than those contained in Defendants' H-2B visa applications or in Plaintiffs' signed employment contracts. Plaintiffs were made to render their services or labor at facilities located in Miami Beach and/or West Palm Beach, FL, all within the Southern District.

30. Most often, Defendants paid Plaintiffs their wages late by an average of two weeks. In fact, some Plaintiffs were not paid the promised wages, low as they already were.

Defendants likewise did not consistently provide Plaintiffs with records of correct payments detailing their pay, deductions, and withholdings.

31. Defendants gave Plaintiffs misinformation about their right to overtime pay for all hours worked over 40 each week. There were many weeks when Defendants failed to pay Plaintiffs the required overtime premium of one and one half times their regular rate of pay for each hour worked in excess of forty each week.

32. Although Plaintiffs complained about their working conditions and about the terms and conditions of their employment, their issues and concerns were never adequately addressed by Defendants. Worse, Defendants gave the impression that they were angry as a result of Plaintiffs' complaints.

33. In order to maintain their control over the Plaintiffs, Defendants threatened Plaintiffs with arrest, deportation, jail, and cancellation of their visas if they left Defendants' employment.

34. Upon information and belief, Defendants failed to comply with the work schedules and job duties promised, and failed to place Plaintiffs with the employers they identified on the visa applications San Villa Co. submitted to the U.S. government, or on the employment contracts entered into with the Plaintiffs. Defendants employed most of their H-2B employees, including Plaintiffs, in other types of positions different from those stated in their seasonal employment contracts.

**<u>Defendants' Coercion and Control over the Plaintiffs</u>**

35. Defendants gained and maintained control over Plaintiffs by actively promoting the impression that they wielded power and influence within the U.S. and Philippine governments and within Philippine and U.S. society, and that those who did not obey them

would be made to suffer the consequences, such as arrest and deportation, or revocation of immigration status.

36. Defendants increased the pressure on Plaintiffs, newly arrived to the United States, by ensuring that they remained isolated and marginalized from the alien society around them. Defendants advised Plaintiffs not to mingle with other Filipino immigrants outside of the San Villa Co. employees.

37. Defendants also held critical immigration documents of the Plaintiffs, such as their Form I-94 cards and/or original copies of their H-2B extension approval notices, deliberately increasing Plaintiffs' sense of powerlessness to leave.

38. Defendant Villanueva often advised San Villa Co. employees, including Plaintiffs, that their respective H-2B petitions have been filed and/or were pending, and that they did not have to worry about their immigration status as "it was ok".

39. Some Plaintiffs got photocopies of their new Form I-94 cards only after the expiration of said cards, and only when another extension petition was allegedly filed in his/her behalf for the next working season.

40. As a result of having their original immigration and identification documents held, Plaintiffs felt they were unable to leave Defendant San Villa Co.

41. Defendants further exercised their control over Plaintiffs and forced them to work constantly by regularly leveling threats of arrest, deportation, blacklisting, lawsuits, and visa cancellation against the Plaintiffs.

42. Defendants used misrepresentations, promises, and threats regarding visas and immigration status to control Plaintiffs. They used false promises of visa renewal and permanent legal status to retain Plaintiffs and maintain control over them.

43. Defendant Villanueva made misrepresentations to the Plaintiffs during their recruitment and throughout their employment regarding San Villa Co.'s ability and willingness to provide them with H-2B visas and/or status.

44. Villanueva assured each Plaintiff that his San Villa Co. would timely file the extension of each Plaintiff's H-2B status, and that while the petition was pending, each Plaintiff was advised by Villanueva that s/he could legally continue working for San Villa Co.

45. Villanueva threatened his H-2B workers, including Plaintiffs, that San Villa Co. would not renew their visas if they failed to comply with San Villa Co.'s work assignments, or if they continued complaining about their wages and the withholding of their Form I-94 cards or H-2B approval notices.

46. Villanueva made these threats even though he and San Villa Co. were clearly violating the H-2B program by forcing Plaintiffs to work at locations other than those approved by the U.S. government.

47. Throughout each Plaintiff's employment, Villanueva reminded them that if they left San Villa Co., he would cancel their visas and no other employer could hire them.

48. Villanueva told his H-2B employees, including Plaintiffs, that if any San Villa Co. employee escaped, he would call the police or immigration enforcement to find them.

49. Villanueva told Plaintiffs that they would be escorted to be deported if they tried to escape and were caught.

50. Villanueva told Plaintiffs that if any San Villa Co. employee fled, Defendants could use the employee's social security number to find them wherever they went.

51. Villanueva told Plaintiffs that he would "blacklist" any San Villa Co. employee with the Philippine Overseas Employment Administration (POEA) if such employee would

escape, so that such employee would face negative immigration consequences and would be unable to work overseas in the future.

52. Villanueva also told Plaintiffs that San Villa Co. could sue any of them in court if they violated their employment contracts or if they left their employment.

53. Villanueva's threats were made on a regular basis, including during staff meetings, most of which occurred within the Southern District of Florida.

54. Plaintiffs were frightened by Defendants' continuous threats, particularly because, as Defendants knew, Plaintiffs were working to pay back the debts acquired to come to the United States and work for San Villa Co.

55. Defendants used the above threats to compel Plaintiffs to continue working for San Villa Co. In addition, Plaintiffs felt compelled to continue working for Defendant San Villa Co. because Defendants withheld their immigration documents, and promised them H-2B status renewals and/or green cards, and also because they still had a lot of debts to pay in the Philippines for their respective placement fees and security bond deposits.

56. As a result of Defendants' coercive conduct and tactics and Plaintiffs' resulting forced labor, Plaintiffs suffered serious emotional and financial distress, harm to their immigration status, and ongoing disruption to their lives. The emotional effects suffered by Plaintiffs included disrupted sleeping, nightmares, ongoing feelings of fear, difficulty developing trust, anxiety, depression, difficulty concentrating and stress.

## FIRST CAUSE OF ACTION

### Trafficking Victims Protection Act of 2003 ("TVPA")
### Forced Labor, 18 U.S.C. §1589

57. Plaintiffs re-allege and incorporate by reference each and every allegation contained in paragraphs 1 through 56 as if set forth fully herein.

58. Plaintiffs bring this claim against both Defendants.

59. This claim is brought under 18 U.S.C. §1595 of the Trafficking Victims Protection Act.

60. Defendants subjected Plaintiffs to forced labor in violation of 18 U.S.C. §1589.

61. Defendants knowingly provided and obtained Plaintiffs' labor and services by subjecting Plaintiff to threats of serious harm, including deportation by immigration and law enforcement officials, cancellation of H-2B status, and loss of immigration status, as well as by falsely promising them H-2B status renewal, and by withholding their immigration documents, in violation of 18 U.S.C. §1589(2).

62. By threatening Plaintiffs with deportation by immigration and law enforcement officials, cancellation of H-2B status, and loss of immigration status, and by falsely promising them H-2B renewal status, and by withholding their immigration documents, Defendants obtained the labor of Plaintiffs through abuse and threatened abuse of law and the legal process in violation of 18 U.S.C. §1589(3).

63. Defendants knowingly provided and obtained Plaintiffs' labor and services by using a scheme, plan and pattern intended to cause Plaintiffs to believe that, if they left Defendants' employ, each of them would suffer serious harm or physical restraint, in violation of 18 U.S.C. §1589(4).

64. As a result of the above violations, each Plaintiff suffered damages.

65. Plaintiffs are entitled to compensatory and punitive damages in an amount to be proven at trial and to any other relief deemed appropriate.

## <u>SECOND CAUSE OF ACTION</u>

**Trafficking Victims Protection Act of 2003 ("TVPA")**
**Human Trafficking, 18 U.S.C. §1590**

66. Plaintiffs re-allege and incorporate by reference each and every allegation contained in paragraphs 1 through 65 as if set forth fully herein.

67. Plaintiffs bring this claim against both Defendants.

68. This claim is brought under 18 U.S.C. §1595 of the Trafficking Victims Protection Act.

69. Defendants knowingly recruited, harbored, and transported each of the Plaintiffs for the purpose of subjecting him/her to forced labor in violation of 18 U.S.C. §1590.

70. Defendants recruited Plaintiffs from within the Philippines, housed them in Defendant-controlled housing, transported them to Florida, falsely promised them H-2B status renewal, and withheld their immigration documents, for the purpose of subjecting them to forced labor.

71. As a result of the above violations, each Plaintiff suffered damages.

72. Plaintiffs are entitled to compensatory and punitive damages in an amount to be proven at trial and to any other relief deemed appropriate.

## THIRD CAUSE OF ACTION

**Alien Tort Statute ("ATS")**
**28 U.S.C. §1350**
**Involuntary Servitude and Forced Labor**

73. Plaintiffs re-allege and incorporate by reference each and every allegation contained in paragraphs 1 through 72 as if set forth fully herein.

74. Plaintiffs, each of whom is an alien, bring this claim against both the Defendants.

75. This Court has jurisdiction over the alleged violations of international law pursuant to the Alien Tort Statute, 28 U.S.C. §1350.

76. Defendants subjected Plaintiffs to involuntary servitude and/or forced labor, which are violations of the law of nations, including customary international law as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

77. The Convention Concerning Forced or Compulsory Labor defines forced labor as "all work or service which is exacted from any person under the menace of any penalty and for which said person has not offered himself voluntarily."

78. The above-named Defendants engaged in acts including, but not limited to, manipulation of legal documents, psychological coercion, and abuse and threatened abuse of the legal process, to exact work or service from the Plaintiffs which the Plaintiffs had not offered voluntarily.

79. Aiding and abetting involuntary servitude and forced labor is also in violation of the law of nations and treaties of the United States and is actionable under the Alien Tort Statute, 28 U.S.C. §1350.

80. Defendant Villanueva, at the very least, aided and abetted the imposition of involuntary servitude and/or forced labor by directing, ordering, conspiring to commit, or aiding the imposition of involuntary servitude and/or forced labor.

81. Each Plaintiff is entitled to compensatory and punitive damages in an amount to be determined at trial and to any other relief deemed appropriate.

## FOURTH CAUSE OF ACTION

**Alien Tort Statute ("ATS")**
**28 U.S.C. §1350**
**Human Trafficking**

82. Plaintiffs re-allege and incorporate by reference each and every allegation contained in paragraphs 1 through 81 as if set forth fully herein.

83. Plaintiffs, each of whom is an alien, bring this claim against both the Defendants.

84. This Court has jurisdiction over the alleged violations of international law pursuant to the Alien Tort Statute, 28 U.S.C. §1350.

85. Defendants engaged in human trafficking, which is a violation of the law of nations, including customary international law as reflected, expressed and defined in multilateral treaties and other international instruments, international and domestic judicial decisions and other authorities.

86. The leading international instrument on the subject defines human trafficking as:

> [T]he recruitment, transportation, transfer, harboring, or receipt of persons by means of the threat or use of force or other forms of coercion, of abduction, of fraud, of deception, of the abuse of power or of a position of vulnerability or of the giving or receiving of payments or benefits to achieve the consent of a person having control over another person, for the purpose of exploitation. (The Protocol to Prevent, Suppress, and Punish Trafficking in Persons, Especially Women and Children, supplementing the United Nations Convention Against Transnational Crime, art 1, Nov. 15, 2003, 55 U.N. GAOR Supp (No. 49) at 60, U.N. Doc. A/45/49 (Vol I) (2001) 40 I.L.M. 355.)

87. Defendants engaged in acts including, but not limited to, the recruitment, transportation, transfer, harboring, or receipt of Plaintiffs. These acts were conducted through the use of the threat of force, coercion, fraud, deception, and the abuse of power and/or a position of vulnerability.

88. Defendants trafficked Plaintiffs for the purpose of obtaining forced labor or services.

89. Aiding and abetting human trafficking is also in violation of the law of nations and treaties of the United States, and is actionable under the Alien Tort Statute, 28 U.S.C. §1350.

90. Defendant Villanueva, at the very least, aided and abetted human trafficking by directing, ordering, conspiring to commit, or aiding human trafficking.

9I. Each Plaintiff is entitled to compensatory and punitive damages in an amount to be determined at trial and to any other relief deemed appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request the following relief:

I. Declaratory and injunctive relief;

2. Compensatory damages;

3. Punitive damages;

4. Such other relief as the Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on each and every claim set forth herein.

Respectfully submitted.
March _,2017. Miami Beach, Florida.

**GENESIS TAN**
*Pro Se Plaintiff*
1945 Park Ave., Apt. 9
Miami Beach, FL 33139
Tel. No. 561-843-6608
Email: genesis_tan2005@yahoo.com

**ROLAND MORALES**
*Pro Se Plaintiff*
1945 Park Ave., Apt. 9
Miami Beach, FL 33139
Tel. No. 786-419-8038
Email: rolandmorales73@yahoo.com

**LOLITO BANANO**
*Pro Se Plaintiff*
1945 Park Ave., Apt.9
Miami Beach, FL 33139
Tel. No. 415-412-9881
Email: lolito_banano@yahoo.com

**MA. GRACE DALIDA**
*Pro Se Plaintiff*
517 Dotterel Road, Apt. 31B
Delray Beach, FL 33444
Tel. No. 786-352-5390
Email: mgd_babes21@yahoo.com

**BERNARD DESCALLAR**
*Pro Se Plaintiff*
3561 Ambassador Drive
Wellington, FL 33414
Tel. No. 305-298-749
Email: bernard_descallar@yahoo.com

# VERIFICATION

STATE OF FLORIDA )
COUNTY OF Miami Dade ) S.S.:

**WE, GENESIS TAN, ROLAND MORALES, LOLITO BANANO, MA. GRACE DALIDA and BERNARD DESCALLAR,** all of legal age and residents of the state of Florida, after having been sworn in accordance with law, hereby state that we are the plaintiffs in the within action. Each of us has read the foregoing Complaint and knows the contents thereof. The contents are true to each of our respective knowledge, except as to matters therein stated to be alleged upon information and belief, and as to those matters, each of us believes them to be true.

**GENESIS TAN**
Passport EC XXXXX

**ROLAND MORALES**
EC XXXXX

**LOLITO BANANO**
Passport EC XXXX

**MA. GRACE DALIDA**
FDL D430 — 076-0

**BERNARD DESCALLAR**
Passport EC7 XXXX

Sworn to and subscribed before me
on March 20, 2017

NOTARY PUBLIC

NOTARY PUBLIC STATE OF FLORIDA
Belkis Condega
COMMISSION # FF185463
EXPIRES: December 28, 2018
WWW.AARONNOTARY.COM